Good morning, Your Honors. I'm Sandra Goldsmith, a Deputy Attorney General representing the State Defendants and Appellants in this matter. As you know, we're here on an appeal of a mandatory preliminary injunction against the California State Departments of Health to provide wraparound services, what the plaintiffs have called wraparound services, and therapeutic foster care to all class members. And it was issued solely on the basis of the Medicaid Act. This is a 1983 action, so it was ordered based on, well, it should have been ordered based on a finding that the members of the plaintiff class were entitled to the services that are called wraparound services and therapeutic foster care under the Medicaid Act as EPSDT services, which are the early periodic screening diagnostic testing services. The, as I understand it, the injunction was not stayed pending appeal, right? That's correct, Your Honor. You applied for a stay, and that was denied. So the State's been compliant with the injunction, right? Yes, Your Honor. We — Have you had any problems? Well, we — we did — we requested an emergency stay from this Court, and that was denied and the appeal was expedited. And we — there was a status conference in the case as — on the 6th of September, 2006, and the district court judge inquired about the status of the appeal and wanted to know when oral argument was. And so at the present time, things are informally on hold pursuant to that status conference, other than the Court ordered the parties to proceed and try to identify potential candidates for a special master position, should the Court determine. For what kind of a position? For the appointment of a special master, should the Court determine that one was either appropriate or necessary. As part of the mandatory preliminary injunction, the Court ordered the State defendants and the Plaintiffs' Counsel to meet and confer on implementation of the injunction and on the issue of the appointment of a special master. All right. Now, do I understand that the State agrees, maybe doesn't agree, but doesn't contest that most of the services included in the Wraparound Services are included in Medicaid anyway? No, Your Honor, the State does not agree to that. The problem is that the Court has ordered that the State provide Wraparound Services and therapeutic foster care as defined by plaintiffs in what the Court refers to as Appendices A and B in the order, and those appendices were supplemental responses to interrogatory requests by the State, and they were provided pursuant to an order on the State defendants' motions to compel, and the plaintiffs were ordered to identify the components of Wraparound and therapeutic foster care which the plaintiff class they were alleging were entitled to under EPSDT, but were not getting because they were not covered by Medi-Cal. We presented evidence on the, in opposition to the motion for preliminary injunction, that clearly refuted that these component parts that were listed in Appendices A and B were Medicaid-covered services. The Court not only ignored it in the order, the district court said that the State had not contested this, which was inaccurate. In fact, when the Court took Appendices A and B from an exhibit that the State defendants had provided on the, in their opposition to preliminary injunction, the, back in 2004, the State defendants filed a motion to join the United States Department of Health and Human Services as an indispensable party. At that time, we submitted a declaration by the State that said, in opposition to the motion that Judge Toshima asked you, I think his question was, aren't the Wraparound and TFC services either provided or not provided for in the 28 particular services required under 1396? They are not, Your Honor. And I was trying to go to the evidence that we had to support that. We had a declaration from Mary Jane Duckett in support of our motion for joinder. And we did not yet have, because the plaintiffs had not given us their, their component parts of what they were calling Wraparound and Therapeutic Foster Care, we did not have Appendices A and B at the time. And Mary Jane Duckett's declaration, she is an official at CMS, said that Wraparound and Therapeutic Foster Care as such are not Medicaid-covered services. Then we got the, the, the, as a result of our motion to compel, we got the Appendices A and B that defined the, what were supposedly the Medicaid-covered component services. We submitted evidence to the district court that was completely ignored, and, and it's, I mean, it's apparent from the record that it was ignored because the court said the component parts, this was the declaration of Rita McCabe in support of the State Defendant's opposition to the motion for preliminary injunction. She went through this list of component parts and said that these were not Medicaid-covered services as such, and you cannot tell. There may be in, in the plaintiff's conception of Wraparound services and Therapeutic Foster Care, there may be some subcomponents that are Medicaid-covered services. And if there are, these are presently being provided as EPSDT services. But not, not in a Wraparound or TFC mode. Right. Now, the issue here fundamentally is whether these services that are being provided should be provided through a method called Wraparound and TFC, or, which I take it is mostly providing them at home rather than at an institution. There's an amazing amount of either, if you want to be charitable, specialized language. If you want to be uncharitable, jargon and baffle gab about some of these definitions of what Wraparound services are. But when you get to the bottom of it, it's either providing it in a customized, integrated way at the child's home, or having the services provided separately in different places and different modalities at different hospitals and different institutions. Right? Yes, except that the component services that the plaintiffs provided, such as engagement of the child and family and these very vague descriptions, do not describe Medicaid- covered services as such. And I'd like to direct your attention to the, not only our evidence that we had submitted previously, but the letter dated August 16, 2006, from the Centers for Medicare and Child Care Services, which this Court has taken judicial notice of. And in that letter, the author, who is an official at CMS at their headquarters, explains in great detail what it takes to be a Medicaid-covered service. A Medicaid-covered service is not just any service that someone wants to put a tag on as a mental health service. It has to be a service that falls under 42 U.S.C. Section 1396, lowercase d, lowercase a and paren. And an EPSDT service must be one of those services. And the CMS letter, I'll refer to this as the CMS letter, the letter that, the August 16, 2006 letter, explains that now that CMS is looking at the components that the plaintiffs have provided as discovery responses, they're embellishing on the declaration that was when we filed the motion to join the federal government. And the, as you, it's a six-page letter. It explains that for a service to be covered, it has to be covered. It has to be one of the services under the statute that I just cited, 42 U.S.C. Section 1396, lowercase d, lowercase a and paren. And for an EPSDT service to be covered, an EPSDT services are defined in 42 U.S.C. Section 1396, lowercase d, lowercase r, 5, for purposes of what we're talking about here. And in that definition, it says that those cases, those services, I'm sorry, must be services that are listed in 1396 DA. And they have to be Medicaid-covered services. So the CMS letter explains that even though there may be services that are out there that benefit a person, they're not necessarily Medicaid-covered services. Then ---- Kennedy, let me ask you a question. What is the state of the evidence before the district court as to whether the rendition of the services enumerated in 1396, I guess, D, the 28 services, what is the state of the evidence as to whether those services were effective to treat the children or ineffective to treat the children?  The plaintiffs, there was not evidence directly on whether services under 1396 DA that are being provided were effective. The plaintiffs were talking in circles in all of their pleadings saying that the state is not giving adequate services because they're not providing wraparound services and therapeutic ---- That's an argument. That's an argument. Now, let me ask you this. What expert witness stood forth, said by declaration or by testimony, I don't know what the proceedings below were, and said the provision of mental health examination as presently rendered under the Medicaid Act is ineffective as to Charlie and Tom and Suzanne, the children. Is there any of that? Well, the plaintiffs allege that the ---- Not allege. Well, ---- Not argument. Uh-huh. Not allegation. Okay. Evidence. The plaintiffs never identified a single Medicaid-covered service that a child was not getting, that the child was entitled to under the Medicaid Act. They just continued to say they were not getting wraparound services and therapeutic foster care. Our declaration by Rita ---- Pardon me. I'm not ---- try again. I'm not trying to ask you whether there was any single service not rendered. I'm asking you whether ---- what is the state of the evidence, if you know, as to whether any service that was rendered in an un-wraparound or un-TFC mode was effective or ineffective to aid the child? I believe to answer the question as asked, I cannot provide you with any evidence. I'll ask the same question of counsel when they get up. So your position is there is no evidence on that issue? There ---- right. We have evidence from the declaration of Rita McCabe that the ---- that services that should be covered under the Medicaid Act are covered under the Medicaid Act. By the way, we did not have a ---- we never had a hearing on the merits. There was no oral testimony. We went in for ---- the hearing was set for October 31, 2006. We went in and the district court judge said the matter was too complicated, that he couldn't rule on it that day, and we were going to ---- he was going to bring us back for a hearing on the merits, and that never happened. I follow you on that, and I think you're accurate on that. In that regard, it seems to me what the district court did was he more or less assumed that each of the services that are included in the wraparound service is a service required to be provided under Medicaid. Yes, Your Honor. And he assumed it ---- Is that ---- you understand that's sort of an assumption that underlies the order? Yes, Your Honor. He assumed it because the plaintiffs told him that. And he doesn't make any findings on that? No. There are no findings of fact. On those issues. No, you know, whatever these are, you know, the 23, 25, 26 services, he doesn't go through each one and says, this is covered by Medicaid, this is under Section 12, so this one's not covered. I mean, he just assumes they're all required to be furnished under Medicaid, right? Right. The only question he really addresses is, well, what's wrong, then, with if they're all required, providing them as wraparound services? Isn't that right? Yes. Now, assume for me for a minute, a hypothetical that he is correct, that all these services are required by Medicaid. If they are, what's wrong with saying, then, okay, you have to provide them as wraparound services? The ---- if ---- and the ---- well, I'd like to go back to the CMS letter because it relates to that, too. But the problem is that they're not Medicaid-covered services, and that is what the CMS letter confirms, and that is what our evidence that was ignored stated. They are not Medicaid-covered services. And what CMS said is that the plaintiffs looking ---- CMS went through every category that was listed under wraparound services in therapeutic foster care and determined and said that it looks like the plaintiffs are trying to get a bundled rate. But it went through every service that they listed in Appendices A and B and said either for each service ---- When you say went through, you mean in that letter? In the letter. That six-page letter? Yes, Your Honor. And for each service, they determined that either they could not tell whether they were Medicaid-covered services or they were not Medicaid-covered services. Right. So your case, then, is that at least some of these services that are included in the wraparound services that were included, I guess by Judge Matz, by reference to the appendices, are not services that are required to be furnished under Medicaid. Is that your case? That's correct. Some of those are not. And the others we cannot tell because the way they're defined, they're not Medicaid-covered services. They're just ---- And for that, you rely on this letter from the Center for Medicaid Service? Correct. That the Court has taken judicial notice of and also on evidence that we submitted in the opposition to the motion for preliminary judgment. There was no evidentiary hearing on this, and there was no findings on each of the separate services. That's correct, Your Honor. Does the ---- do the plaintiffs have any cause of action other than requiring the State to comply with Medicaid? I mean, do they have any other issue here? They have other claims that are ADA and due process claims. But they have not been ruled on. And at the hearing that was supposed to be the hearing on the merits last year, they basically told the Court that they were not Medicaid-covered, that they were the Medicaid claim was their primary claim. And the Court never ruled on the ADA. And the plaintiffs really, from the State's point of view, never really clearly articulated an ADA claim. And they were trying to cover those members of the plaintiff class who were not Medicaid-covered. Because not all of the members of the plaintiff's class are covered by Medicaid. The issue for the Court is if these services they claim they're entitled to are covered by Medicaid, then you're supposed to provide them. If they're not, then there's no cause of action here, right? Well, the Court is saying that the State is to provide all of these services, and the State is saying, but they're not Medicaid-covered services. That's just what Judge Silas said. Yes. And the again, going back to the order on the motions to compel, the plaintiffs in Appendices A and B, those were what plaintiffs said were Medicaid-covered services that the State was not providing, that it was required to provide under Medicaid. And CMS looks at it and agrees with the State's position in opposition to the motion for preliminary injunction, and says, these are not Medicaid-covered services as such, and we don't know what, you know, whether any services that you're contemplating under that are Medicaid-covered services. The plaintiff's position, excepted by the trial judge, was that any services which are necessary to implement and make better the other services which are provided, if so, in fact, they'll become, quote, services, and since all necessary services are Medicaid-covered, all necessary services must be provided, these must be provided, whether they're listed or not, right? I think that's an accurate statement of what they argued, but I think it's, the argument is incorrect, because they're not, and in the CMS letter, the CMS letter addresses that, and how there may be services that are beneficial to children, but if they're not Medicaid-covered services, then they're not EPSDT services. And so where this is a mandatory preliminary injunction, under 1983, where the court is ordering something that purportedly would be an entitlement to these services under Medicaid, and the Centers for Medicare and Medicaid Services say, we can't even determine whether there's a Medicaid-covered service included in these, and for some we can say that there definitely aren't, then, you know, the whole legal, the legal basis underlying the preliminary injunction is totally false. Thank you very much. May it please the Court. The evidence in the court below was overwhelming that at the present time, the current system is not meeting the mental health needs of children in foster care. Was there a specific finding that the services rendered in non-wraparound and non-FTC mode were ineffective as to any of the plaintiffs? No, Your Honor, there was not a specific finding, but that is not necessary for our claim. To go back to your question. That may well be necessary to your claim. No, Your Honor. I would submit for our claim what we need to prove under EPSDT is two things. First of all, we have to show that the service is medically necessary. And second, we have to show that the service falls within one or more of those 28 categories of covered services. You have to show it came under Medicaid, right? You don't have to. Yes. Oh, yes. It has to be within one of those 28 categories. But to go back to the Court's initial question, the evidence in the court below, and it was overwhelming, from the little Hoover Commission reports to the declarations from a number of people, Bruce Cameron, Charles Huffine, Patricia Chamberlain, to clinicians in the State of California, to the evidence from the children, involving the individual children, was that their mental health were not being met under the current system of providing mental health services. Equally important for the children. Now, why is that? Is that because they're not provided wraparound services or some other reason? In part, Your Honor. It's in part that, and it's in part because they're relying on traditional methods, such as residential treatment, which has not been shown to be effective at all in treating children. So part of your, at least part of your complaint is not that the services are not being provided, but the manner in which they're being provided is ineffective. Is that what I'm asking? Or not as effective as it could be if it's provided some other way? Well, I think, Your Honor, yes. I mean, part of the argument is that the services they are providing are not effective, that they are not meeting children's needs. But as I said before in the question from Judge Baer, we do not have to show that. For purposes of our claim, what we have to show is that the service is medically necessary and that it is within the current. So first you have to show that they're required to be provided under Medicaid. That's correct. And that two-part test is whether it's medically necessary. And on that showing, what findings did the district court make? Okay. And that was the second question I was going to get to. As to the second question, which you raised, was whether the court made findings. The court made findings on both issues. In the opinion, there are several pages of the order in which the court makes findings on the issue of medical necessity. And as to the issue that you raised, Judge Tishuma, whether the court made findings as to whether these two services and the components thereof are covered by the Medicaid Act, I call the Court's attention to pages 13 and 14 of the decision. Page what, 13 and 14? 13 and 14. It's at ER 14682 and 14683. The Court goes through and lists what are the components, goes on to explain how it's a breakdown, and then concludes by saying the Court finds it likely that virtually all the corresponding categories of Section 1396DA identified claims do, in fact, encompass the link to service. Well, what does he mean? Right at the point you're referencing, Judge Matt says each of the subcomponents may fall under one or more of the 28 categories. What does that mean? He doesn't say it does fall. What does that mean, may fall? It may fall. It may not fall. Well, I think he meant it does fall, although I understand that he used the term may. I think it was his conclusion that they did fall within at least one or more of these categories for each. First of all, for the two services overall and then for each of the components thereof. The last thing I want to say, just in response to the two questions raised by the children foster care, the State defendants presented absolutely no evidence to show that the needs of these children are being met. And that's part of what the Court was considering in ruling this motion. Well, but isn't that in part because the Court took the position that whether the treatment received by these children under the 28 services not wrapped around and not TFCed was not an issue of whether it was effective or not. The only issue was whether the wraparound services in TFC were, quote, services necessary, and if there were services necessary, they should be rendered regardless whether the other services were effective or not. And that's correct, Your Honor. But I just simply, in terms of what the state of the record is, the state of the overall record is, and this goes to it being a preliminary injunction, and whether irreparable harm is occurring is whether the needs are being met otherwise. And the state of the record in that regard was that their needs were not being met and, in fact, State defendants presented no evidence to the contrary. Well, the needs were being met is one issue. It may be that the 28 types of service which Medicaid provides can never cure these children. The question is whether to the extent that they are provided, they are provided effectively without being wrapped around or FTCed. Your Honor, if I might clarify. The Federal law sets out 28 categories of services. Whether a State provides all the particular services within the category, to some extent, depends on what the State does. What was the issue in this case, and the Court correctly identified it, is ultimately comes down to whether these two particular services are medically necessary and whether they fall within those, one or more of those 28 categories. Now, as I sat here today, you will, I did not hear opposing counsel cite any statutes, regulations, or cases to refute the findings and the conclusion by the Court below. They rested almost entirely upon that August 16th letter, 2006, from CMS. Answer this. It's a very basic question for me. I think Judge Baez asked you some questions along these lines, but what I don't really understand is what difference does it make to the plaintiffs whether or not these services are categorized or provided as wraparound services or TFC services as opposed to, you know, individually. I think your case seems to be more that they have to be provided as wraparound services. And, you know, you're not interested in whether they're meeting the obligations to provide these 28 services individually. Now, what is the reason for that? That insistence on wraparound, it must make a difference. Your Honor, it does make a difference. But to answer the overall question that you've raised, it's our position that these particular services, the bundle of those services are medically necessary and that they're then covered. You mean it's medically necessary to bundle them? Yes. You need to do this together. You know, first of all, we'll submit that much of what they say is being provided isn't being provided. But above and beyond that, they have to be provided together. It makes it medically necessary. If I might then jump, actually, to the second point I want to talk today a little bit about the definitions. You know, Judge Baez, you know, to a nutshell, got to what is the definition of wraparound services. You know, in part, it involves case management. And that involves having the child, the child's family, and other important members of the child's household involved in the planning process. And case management is a covered Medicaid service. There's no dispute about it. The statute doesn't use that term, wraparound, or therapeutic. That's correct, Your Honor. The 28 categories list overall categories of services. There is no dispute that a service does not have to be listed expressly by name in one of those 28 categories to be covered. The question is whether those services, be it wraparound services or therapeutic foster care, fall within those categories of services. There are a number of different services that can qualify as case management that are not listed by name in the statute. By the same token, there are a number of different services that qualify as rehabilitation services that qualify within the statute but are not listed by name in the statute itself. The test is not whether it's listed expressly by name. Both sides agree on that. The question is whether the service, when you look at it, ultimately falls within that category. They claim it doesn't, and you claim it does. That's correct. That's correct. And that's much of the nub of the dispute. But if I can just speak for a moment or two about wraparound services. The other part about wraparound services, besides as case management, is the emphasis on providing services in the home or the child's community. I do not want to sound like a real estate agent, but location makes a difference. Consider the following. If you have a child such as the members of this class with intense mental health needs, one choice is you can place the child in a locked facility with 50 other children with equally challenging behaviors. The other possibility is you can send the child home with wraparound services and provide them those services at home. We submit that it's clear which of those two will work. And by work, I mean prove more therapeutic. You can't do wraparound services in an institution. That goes against the whole grain of what wraparound services is. As I said before, one of the emphases of wraparound is actually to provide the services at home or the community. There is a therapeutic value in being at home and getting the services at home. But that, that, I don't differ from you, but isn't that a policy argument directed toward the policy institutions of this country, which is the legislature? No, Your Honor. If, at the end of the day, we can show it is medically necessary, and that's part of what we're saying, is that these services are medically necessary. That's a different way of saying they're not effective otherwise. Correct. And the other part of it being within the 28 categories, frankly, the policy decision was made by the U.S. Congress when they said, under EPSDT, these are the two requirements, that it, A, be medically necessary, and, B, that it fall within those 28 categories. So if you look, if you go beyond then the first issue, and let me just talk briefly about therapeutic foster care. Therapeutic foster care is, in a nutshell, just simply training a foster parent to be a therapist on the spot. Above and beyond that, therapeutic foster care is essentially like wraparound services, the same emphasis on case management, the same emphasis on providing services to the child in their home or their community. The reason you might provide therapeutic foster care versus wraparound services is that the child may not be able to go home to their parents. Now, the evidence in the court below, and it was essentially undisputed, is that both these services are necessary to meet the children's needs, that they yield to results, and they are, frankly, at the end of the day, cheaper than the alternative. Do most other States have these same services that you're talking about? Your Honor, as the court ---- It's not kind of a first time. No, it's not the first time. Your Honor, as the court below found, 19 other States' Medicaid programs provide therapeutic foster care. Four other States provide wraparound services. This is not the first time. But if California is required to do it, other States would have to be required to do it, you know, theoretically, because they all follow the Medicaid. That's right. In theory, they might be, but it depends on each State and whether they have other ways to meet these children's  But in this particular State, they are not meeting the needs, the services are medically necessary, and they fall within the 28 categories. If I might ---- Pardon me. May I ask you a question? I see here that Judge Matt said not only do wraparound services and therapeutic foster care, I'm reading from page 16 of his opinion, ER 14-685, not only do wraparound services and therapeutic foster care fall within the scope of Medicaid mandated ESPDT services, but they may be, quote, medically necessary, unquote, within the meaning of the statute. Did he ever convert that may be to are medically necessary? Did he make that finding under 52A? Your Honor, he did not expressly. On the other hand, if you look at the next two pages of the order, he goes through citing a series of experts, all of whom attest to the fact that it's medically necessary. He then goes on to point out, and this is at page 18 of that same order, the State defendants have not presented any declaration by mental health experts contesting this evidence that for foster care children with mental health care needs. And the Court then goes on to reach its ultimate conclusion. I might point out that Judge Matz is an experienced trial court judge. He understood that this was a mandatory preliminary injunction. He had a voluminous record to the extent that he may not have used the exact terms of art the Court is in a position, if it sees fit, to look at the evidence and fill in the gaps. And on this particular one, the evidence was that these services were necessary and the State presented no evidence to the contrary. Did you get the – first of all, you agree with Ms. Goldsmith that the injunction is sort of on an informal hold? I would say that at this point in time it's not being fully employed. That is correct. But they've taken – But I also – I thought I read somewhere that you did, Judge Matz, you did get together and come up with some kind of a plan or a draft of a plan or something like that. Is that right? We've taken some initial steps. There were some meetings. There were some steps at implementation. But, no, it's not being fully implemented. So you haven't, at least not yet, reached agreement on what should be included in this plan that Judge Matz wants. That's correct, Your Honor. And he's apparently waiting for some ruling on appeal, then, before he goes forward. Is that right? I believe so. If I might, if I can just go back to that CMS letter, because so much has been made of it today. And I want to point out that opposing counsel has overstated the importance of that letter in several respects. First of all, the Court must understand that this letter arose in the rather unusual context of the State asking for sort of an informal opinion. Well, you know, we recognize that was prepared expressly for this litigation. You know, I mean, we understand that. Okay. And we understand what the cases say about that kind of letter, too. Okay. I just want to underscore is we do not know what State officials said to the Federal Government in connection with this letter. But what we do know is that what is required for a State plan amendment, and that's essentially what CMS was giving, was a preview on what might happen with a State plan amendment, is much more detailed than what is required from the preliminary injunction order. If you go to the second page of the letter, they took — Ms. Arden talks about how, with a State plan amendment, typically, quote, there is a flow of information about the proposed services, payment methodologies, and compliance with Medicaid statutory requirements. That's well beyond what the district court was asked to do and ruled upon. We submit to you that drafting the type of details and specifics for a State plan amendment is what — one of the things that the district court commonly complained that we would do as part of this process to implement the preliminary injunction order. Above and beyond that, opposing counsel has overstated what was said in the letter. The letter, in part, expresses at some points the tentative opinions that some of these components can be covered under Medicaid. The letter then goes on to express concerns that some of the other components may not possibly be covered under Medicaid. But what we submit to you is that we are confident those concerns can be met. Let me give an example. One of the concerns raised by the CMS official is that some of the services seem to be directed at other family members and to meet their needs. That can be easily clarified. The way to do it is to say that, yes, you can provide some services to other family members, but it does have to be for the benefit and only for the benefit of the Medicaid-eligible child. This is, in fact, what wraparound services and therapeutic foster care does. In addition, the Court should not lose sight of the fact of what I said a few minutes ago. Nineteen State Medicaid programs are providing therapeutic foster care. Four State Medicaid programs are providing wraparound services. If those other States were able to do this and to get what is necessary for a State plan amendment, then presumably California can do this as well. Finally, the district court made it clear in its addendum to its order that the order itself was not written in stone. The Court expressed a flexibility in how he would deal with the components and subcomponents, so that we submit to you that if State defendants believe that the letter raises concerns, the way to deal with this is to go back and seek a modification from the district court, as opposed to seeking a ruling in this Court. I know that I have limited time left. What I would like to underscore for the Court is that if you look at what the district court did on the two-part test, medical necessity, there's no question the Court made the finding. The second issue, then, is whether the State has proved to the Court that these services do not fall within any of the 28 categories of services covered by the Medicaid Act, and we submit they do not. Now, if I might, just nearing the end of this, in preparing for this argument, I would have read a 2001 letter from CMS. This letter was sent to all State Medicaid directors and child welfare services directors. The letter was introduced actually by State defendants in the Court below, and it can be found at pages 12527 through 12560 of their excerpts of record. The letter says that case management includes, quote, 1, assessment of the eligible individual to determine service needs, 2, development of a specific care plan, 3, referral and related activities to help the individual obtain the needed service activities, and 4, monitoring and follow-up. If the Court considers that definition, that instruction, that's essentially what is being done with wraparound services and therapeutic foster care as ordered by the Court below. The letter actually goes on, then, to talk about what services are not allowed under Medicaid, and what is equally striking is that none of what the district court ordered fits within the category of what they described as non-allowed activities. If I could just take one minute and indulge with the Court. So far, I've talked about this, and it's mostly been in a dry tone and not getting down to what's at stake here. This lawsuit was brought on behalf of approximately 80,000 children in foster care. At least half of those children have mental health needs due to being victims of abuse and neglect. Many of them have unmet, have serious, excuse me, serious mental health needs. The evidence in the Court below is that the needs of these children are not being met. The undisputed evidence in the Court below is that both wraparound services and therapeutic foster care are necessary to meet these children's needs, will improve both their mental health and their overall behavior, and are actually, at the end of the day, cost-effective. Unless the Court has any further questions, I urge you to affirm the Colmarine charge. Thank you, sir. All right. The matter will stand submitted. I think you've used up all your time. So the matter will stand submitted as of this time, and we are now in recess.
judges: Siler, Tashima, Bea